```
 1                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF KENTUCKY
 2                        LOUISVILLE DIVISION


 3
      UNITED STATES OF AMERICA,    )  Case No. 3:98CR-111-H
 4                                 )
              Plaintiff,           )
 5                                 )
      VS.                          )
 6                                 )
      JOHN CHARLES VOLUNGUS,       )
 7                                 )  March 9, 1999
              Defendant.           )  Louisville, Kentucky
 8

 9           *****************************************

10                  TRANSCRIPT OF CHANGE OF PLEA
              BEFORE HONORABLE JOHN G. HEYBURN II
11                  UNITED STATES DISTRICT JUDGE

12           *****************************************

13

      APPEARANCES:
14
      For United States:        R. Don Gifford, II
15                              Terry Cushing
                                U.S. Attorney's Office
16                              510 West Broadway
                                Louisville, Kentucky 40202
17
      For Defendant:           Randal K. Perkins
18                              455 South Fourth Avenue
                                Louisville, Kentucky 40202
19
      [Defendant present.]
20


21


22
                      Alan W. Wernecke, RMR, CRR
23                     Official Court Reporter
                        221 U.S. Courthouse
24                   Louisville, Kentucky 40202
      Proceedings recorded by mechanical stenography, transcript
25    produced by computer.
```

1          (Begin proceedings in open court at 9:20 a.m.)

2               THE CLERK:  Criminal Action 3:98CR-00111.  *United*

3     *States of America v. John Charles Volungus.*

4               MR. GIFFORD:  Don Gifford for the Untied States,

5     Your Honor, with Terry Cushing.

6               THE COURT:  Morning.

7               MR. PERKINS:  Randy Perkins for the defendant.

8               THE COURT:  Okay.  We are here for a plea.

9               MR. PERKINS:  That's correct, Your Honor.

10              THE COURT:  Would you step forward?  All right.

11    Mr. Volungus, before I accept your plea, there are going to be

12    a number of questions I need to ask you to make sure you

13    understand your constitutional rights, the significance of and

14    the consequences of waiving your constitutional rights, making

15    sure you are doing all this voluntarily and that there's a

16    factual basis for the charges against you.  Do you understand?

17              THE DEFENDANT:  Yes, sir.

18              THE COURT:  Okay.  Before we proceed any further,

19    I'm going to the ask the clerk to administer the oath to you.

20        (The defendant was duly sworn.)

21              THE COURT:  As we go along, if I ask you any

22    question you don't understand, feel free to ask me to repeat

23    it.  You can also consult with your attorney at any time if

24    you feel uncertain about any answer you might be giving, okay?

25              THE DEFENDANT:  Yes, sir.

1          THE COURT:  All right.  State your full name and

2    address, please.

3          THE DEFENDANT:  John Charles Volungus, 4 Applewood

4    Drive, Rexford, New York, 12148.

5          THE COURT:  And how far did you go in school?

6          THE DEFENDANT:  Graduated with a Bachelor of Arts

7    from Penn State, sir.

8          THE COURT:  All right.  You are not under the

9    influence of alcohol or drugs, are you?

10          THE DEFENDANT:  No, sir.

11          THE COURT:  Any counsel have any doubt as to the

12    defendant's competence to change his plea here today?

13          MR. GIFFORD:  No, Your Honor.

14          MR. PERKINS:  No, Your Honor.

15          THE COURT:  Court finds that the defendant is

16    competent to plead to the crime of which he has been accused.

17      Have you had plenty of chance to discuss this case with

18    your attorney?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  Are you satisfied with the advice that

21    he has given you?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  I'm sure that he has told you that you

24    have a number of constitutional rights in connection with the

25    charges against you.

1       THE DEFENDANT:  Yes, sir.

2       THE COURT:  Among those are, of course, the right to

3  assistance of counsel, which you have, the right to trial by

4  jury.  Do you understand that?

5       THE DEFENDANT:  Yes, sir.

6       THE COURT:  And, of course, in such a trial the

7  United States would have to prove your guilt beyond a

8  reasonable doubt.  You would be presumed innocent from the

9  beginning of the trial until the end.  Do you understand that?

10       THE DEFENDANT:  Yes, sir.

11       THE COURT:  Of course, you would be able to subpoena

12  witnesses on your own behalf, cross examine witnesses who came

13  to testify against you.  Most importantly, no one could force

14  you to testify in the trial, and no one could force you to

15  testify against yourself.  Do you understand that?

16       THE DEFENDANT:  Yes, sir.

17       THE COURT:  Okay.  Do you understand that by

18  changing your plea here that you will be waiving, or giving

19  up, all these constitutional rights?  Do you understand that?

20       THE DEFENDANT:  Yes, sir.

21       THE COURT:  Okay.  Court finds that the defendant

22  does understand his constitutional rights.

23     Is it your intention, Mr. Volungus, to waive and give up

24  those rights?

25       THE DEFENDANT:  Yes, sir.

1          THE COURT:  Okay.  Defendant has waived his rights.

2     You have seen a copy of the indictment, have you not?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Okay.  Could the United States please

5     summarize the charges contained in the indictment?

6          I'm going to ask you also, could you summarize at the

7     same time the evidence which the United States would propose

8     which would be admitted at trial in support of the charges?

9          MR. GIFFORD:  Yes, Your Honor.  Count 1, John

10    Charles Volungus, a/k/a Kossack, in Count 1 he is charged in

11    violation of 18 U.S.C. 2422(b), in which the defendant Kossack

12    used a facility and means of interstate commerce, including

13    telephone, wires and Internet, knowingly attempted to

14    persuade, induce, entice, and coerce a person under 18 years

15    of age to engage in a sexual act for which any person may be

16    criminally prosecuted under federal, state, or local law.

17         The evidence that the United States would propose in

18    Count 1 would be in mid May of 1998, military police

19    investigator, David Austin, was conducting an Internet

20    investigation of possible child pornography affecting Fort

21    Knox, Kentucky.  He logged on to the Microsoft Internet Relay

22    Chat, also known as MIRC, as Deanna.

23         He first came into contact with a person named as Kossack

24    in a chat room called FAMILY SEX.  Later he changed his name

25    to Indy Girl -- the investigator changed his name to Indy Girl

1    and was approached once again by Kossack in a room called

2    PEDOMOMS, or PEDOMOMS, which at that time Kossack approached

3    the investigator through the Internet and asked for a private

4    chat.  They agreed, in which Kossack described himself as a,

5    quote, real-life pedophile.

6         He also -- he indicated his interest, that he was

7    interested in children as young as 10, and once he found out

8    that the investigator posing as Deanna, or Indy Girl, had a

9    14-year-old sister named Sarah, he asked to be introduced to

10   this 14-year-old.  At this point through these Internet

11   conversations they discussed dressing the 14-year-old Sarah up

12   for the sake of undressing her and having sex.

13        He also talked of enjoying many young girls, starting

14   with picking up 14-year-olds in Frankfurt, Germany, and trying

15   anal sex with them, his first being a 12-year-old while

16   babysitting while still here in the United States.  He talked

17   about Sarah getting pregnant, and he would if she wanted to in

18   that he believed that many kids were responsible at that age.

19   He also talked about taking pictures of Sarah while they were

20   doing it.  He also admitted, among other things, of doing a

21   video with 14-year-olds but having to get rid of that video

22   due to Customs.

23        They also exchanged some e-mails, and at this time

24   through this e-mail they were able to determine that the

25   e-mail address belonging to Volungus -- this e-mail address

1    belonged to a John Charles Volungus -- the e-mail belonging

2    to Kossack belonged to John Charles Volungus.  They did a

3    search of it, and through their conversations he indicated

4    that he was a recruiter out of Nashville.  Since this was

5    military-related, they did a military search, and they found

6    that John Charles Volungus  was stationed at Fort Campbell,

7    Kentucky.

8         After several more conversations of discussing where they

9    would meet at, which they decided to be in Elizabethtown,

10   Kentucky, they set up a live phone call in which two young

11   female MPs spoke to John Charles Volungus in which they set

12   up the meeting place in Elizabethtown, Kentucky, and in which

13   he believed he was speaking with 14-year-old Sarah, and he

14   asked many questions, in fact, quote, "Have you ever had your

15   pussy licked," and, "Would you like to go into the bushes to

16   do so?"

17        On August 22nd, John Charles Volungus, the defendant,

18   also known as Kossack, drove to Elizabethtown, Kentucky, to

19   meet with what he believed to be the 19-year-old and the

20   14-year-old.  The two young MPs that spoke to him on the phone

21   posed as these two individuals at the lake there in the park

22   in Elizabethtown, Kentucky.  He approached them, at which time

23   the FBI took him under apprehension.

24        That would be the evidence -- some of the evidence that

25   the United States would propose in proving Count 1 for the

1    attempted enticing of a minor.

2        In Count 2, the United States has charged in the

3    indictment that within the special maritime and territorial

4    jurisdiction of the United States, the Fort Campbell Military

5    Reservation, John Volungus did knowingly possess three or

6    more --

7            THE COURT:  I think we can shorten it a teeny bit.

8    I think we can summarize what the indictment is and what the

9    evidence is.

10           MR. GIFFORD:  Okay.  He did possess three or more

11   periodicals of what is known as child pornography.  When he

12   was arrested, he gave consent to search his room and his

13   computer located at Fort Campbell, Kentucky, which he admitted

14   that he did have child pornography on his computer.

15       At Fort Campbell, Kentucky, an Army Criminal

16   Investigation Division investigator and a CID source got into

17   the computer and discovered many pictures, which they believed

18   to be child pornography, close to 1,800 pictures.  Later when

19   it was sent to the lab, they found over 4,000 pictures, most

20   of which were child pornography.   All of this was within the

21   possession -- all of this was in John Charles Volungus's room,

22   which he had to himself.

23       In Counts 3, 4, 5, 6, and 7, Mr. Volungus is charged with

24   receiving child pornography through interstate commerce, and

25   the proof of the United States would be that he received this

1    through the Internet.  The interstate commerce would be

2    established that he received this through Internet service

3    provider Prodigy.  He lived in Fort Campbell, Kentucky, but

4    his dial-up server was located in Tennessee.  He would have to

5    dial a Tennessee number with his computer and receive the

6    pornography through the interstate lines through there.  This

7    happened within the Western District of Kentucky.

8                THE COURT:  Okay.  Is he pleading to 8?

9                MR. GIFFORD:  Yes.  The eighth count, Your Honor, is

10   a forfeiture count upon a conviction of 2252.

11               THE COURT:  All right.  Mr. Volungus, are those the

12   charges against you as you understand them?

13               THE DEFENDANT:  Yes, sir.

14               THE COURT:  What are the maximum terms under these

15   charges?

16               MR. GIFFORD:  The maximum -- Your Honor, the maximum

17   that he could receive under Count 1 for the attempted

18   enticement is a -- is confinement up to 10 years and a

19   $250,000 fine, no more than three years supervised release.

20   Count 2 for the possession of the child pornography is no more

21   than five years, a $250,000 fine or both, and one year

22   supervised release.  For Counts 3, 4, 5, 6, and 7, each count

23   has no more than 15 years, a $250,000 fine, and three years

24   supervised release on each count.  And Count 8 is the

25   forfeiture count, of course.

1          THE COURT:  Mr. Volungus, you understand that for a

2     number of these individual charges, you could receive up to 15

3     years in custody, a $250,000 fine, plus a period of supervised

4     release, and that's not counting whether the charges are

5     sentenced consecutively or concurrently?  Do you understand

6     that?

7          THE DEFENDANT:  Yes, sir, I do.

8          THE COURT:  Okay.  Now, has anyone forced you or

9     threatened you in any way to enter into this plea agreement?

10          THE DEFENDANT:  No, sir.

11          THE COURT:  Could the United States please describe

12     the plea agreement?

13          Listen carefully, Mr. Volungus.  I'm going to ask you at

14     the completion of this whether the plea agreement Mr. Cushing

15     is describing is the plea agreement that you have entered

16     into.

17          MR. CUSHING:  Thank you, Your Honor.  If it please

18     the Court, I'll summarize the plea agreement.  Basically the

19     plea agreement calls for the United States to recommend a

20     sentence within the guideline range.

21          The other essential term is that the United States will

22     recommend a two-level reduction for acceptance of

23     responsibility or will not oppose that adjustment so long as

24     Mr. Volungus admits in open court here to Your Honor his

25     conduct in committing these crimes.  He did give a statement

1  to the FBI in which he pretty freely admitted the possession

2  and receipt of child pornography.  He waffled a little bit on

3  the enticement count, though he basically admitted the

4  essential elements.

5       But we want -- our concern there is that he does in fact

6  accept responsibility for his conduct in enticing what he

7  believed to be a 14-year-old to have sex acts.  Of course,

8  that was accomplished in interstate commerce, as Captain

9  Gifford described, the telephone lines being from Kentucky to

10 Tennessee.  In addition, that he admits that conduct to the

11 probation officer in preparation of the presentence report and

12 doesn't further engage in any conduct that would negate

13 acceptance of responsibility, such as violating any bond.

14 We are going to request detention after this guilty plea, but

15 if the Court puts him on bond, that he does not violate his

16 bond.

17      Judge, in addition, the plea agreement does call for

18 Mr. Volungus to admit to the forfeiture count and forfeit the

19 computer equipment the FBI and CID seized as well as any and

20 all pictures of child pornography that were downloaded.  As

21 Captain Gifford noted, there was somewhere in the neighborhood

22 of 4,000 of those pictures, and several of those have been

23 printed out, and Mr. Volungus agrees to the forfeiture of

24 those.

25      Your Honor, I believe those are the essential elements of

1   the plea agreement.  It does advise the defendant of the

2   maximum penalties.  Ninety years would be the combined maximum

3   imprisonment range, $1,750,000 the combined maximum fine, and

4   a three-year term of supervised release.

5           THE COURT:  Okay.  Mr. Volungus, is that the --

6   are those the terms of the plea agreement as you understand

7   them?

8           THE DEFENDANT:  Yes, sir.

9           MR. CUSHING:  Your Honor, excuse me.  I'm sorry.

10  One thing I failed to mention.  This plea agreement is

11  pursuant to Rule 11(e)(1)(B), and it's a recommendation, and

12  the defendant will not be able to withdraw his plea if the

13  Court does not follow the recommendation.  We both do reserve

14  rights to object to presentence report calculations.  That

15  only means that we haven't agreed on a particular calculation,

16  and the defendant has not waived his right to appeal that, as

17  has been the practice in our district for some time.

18          THE COURT:  Mr. Volungus, you understand that before

19  you are actually sentenced, there will be a presentence

20  investigation.  The Sentencing Commission guidelines as

21  related to your case will be determined, and then I will

22  determine your sentence based on that report and those

23  guidelines and after hearing the argument of counsel and

24  applying the applicable law.  By entering into this plea

25  agreement, if you don't like the sentence that I give you, if

1    it's different than what you have expected, even though you

2    and the United States have not agreed on any specific term of

3    sentence, if it's more than what you expected, different than

4    what you expected, you won't be able to withdraw your guilty

5    plea.  You can appeal if you think my sentence is wrong as a

6    matter of law, but you won't be able to change your mind and

7    go to trial.  Do you understand that?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  Is it still your intention to go through

10   with the plea agreement?  Is it still your intention to go

11   through with the plea agreement?  That is what you intend to

12   do, to plead guilty; is that right?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  Now, just a moment ago Mr. Gifford on

15   behalf of the United States summarized all of the facts which

16   he said provide a factual basis for the charges against you.

17   I need to ask you now whether you agree with Mr. Gifford's

18   summary of those facts.

19             THE DEFENDANT:  Yes, sir, I do.

20             THE COURT:  Do you agree with them in every respect,

21   and did you do the things that Mr. Gifford has said that you

22   have done?

23             THE DEFENDANT:  Yes, sir, I did.

24             THE COURT:  All right.  You've answered in the

25   affirmative.  The Court finds that there is a factual basis

1    then for the charges against you, and I'll now take your

2    guilty plea in *United States of America versus John Charles*

3    *Volungus*, Criminal Case 98-111.

4        Mr. Volungus, how do you plead as to Count 1 of the

5    indictment -- the second superseding indictment; is that

6    correct?  How do you plead as to Count 1 of the second

7    superseding indictment?

8               THE DEFENDANT:  Guilty, Your Honor.

9               THE COURT:  And as to Count 2, how do you plead?

10              THE DEFENDANT:  Guilty, Your Honor.

11              THE COURT:  And as to Count 3, how do you plead?

12              THE DEFENDANT:  Guilty, Your Honor.

13              THE COURT:  And how do you plead, Mr. Volungus, as

14   to Count 4?

15              THE DEFENDANT:  Guilty, Your Honor.

16              THE COURT:  And as to Count 5, how do you plead?

17              THE DEFENDANT:  Guilty, Your Honor.

18              THE COURT:  And as to Count 6, how do you plead?

19              THE DEFENDANT:  Guilty, Your Honor.

20              THE COURT:  And as to Count 7, Mr. Volungus, how do

21   you plead?

22              THE DEFENDANT:  Guilty, Your Honor.

23              THE COURT:  And finally, how do you plead as to

24   Count 8 of the second superseding indictment?

25              THE DEFENDANT:  Guilty, Your Honor.

1        THE COURT:  Okay.  Defendant has pled and the Court

2   will let the guilty pleas be entered and accepted as to John

3   Charles Volungus on Counts 1 through 8 of the second

4   superseding indictment.

5      All right.  We need to set a sentencing date.

6        DEPUTY CLERK:  June the 11th at 1:30.

7        THE COURT:  Let's set it either the week before --

8   let me see -- the week before or the week --

9        DEPUTY CLERK:  Or the next week?

10        THE COURT:  Early the next week.

11        DEPUTY CLERK:  How about the 14th or 15th?

12        THE COURT:  That's the same week, isn't it?

13        DEPUTY CLERK:  No.  The 11th is on a Friday.

14        THE COURT:  The 14th or 15th would be fine.

15        DEPUTY CLERK:  You have KBA that week.

16        THE COURT:  That's fine.

17        DEPUTY CLERK:  14th.  We can do it in the morning

18   at 10:00.  14th at 10:00.

19        THE COURT:  All right.  What's the recommendation as

20   to the defendant's status pending sentencing?

21        MR. GIFFORD:  Your Honor, we would ask that

22   Mr. Volungus be detained as of today.

23        THE COURT:  Has he been on bond up to this point?

24        MR. PERKINS:  Your Honor, up to this point

25   Mr. Volungus has been on unsecured bond, total release, never

1    missed an appointment with the probation officer, never failed

2    to appear in court.  He's living with his parents in Rexford,

3    New York.  As the Court is aware, he was in the military.

4    He's now out.  He is compliant with all the conditions of his

5    bond.  His parents have been extremely supportive.

6              THE COURT:  Are these his parents?

7              MR. PERKINS:  Yes, these are his parents.  They

8    traveled with him.  They've been extremely supportive.  They

9    have been involved with his defense from day one.

10       I would submit that there is absolutely no basis for the

11   United States to argue that he is a flight risk beyond the

12   fact that he's pled guilty.  He's had ample opportunity to

13   flee had he had that desire or that intention, and he has not

14   done so.

15       He has not violated one condition of his bond.  He has no

16   history or allegation of any violence, sexual or otherwise.

17   His parents do not have access to Internet facilities.  He

18   doesn't have access to a computer that would allow him on the

19   Internet except through some public library or something of

20   that nature.  I would submit for those reasons that he should

21   be allowed this opportunity.

22       As you know, Judge, Mr. Volungus appeared here this week

23   in Louisville with the possibility of going to trial on

24   Wednesday.  He needs a chance to get his things in order.  He

25   didn't come down here preparing to enter this guilty plea

1    today.  He needs that opportunity.  I think he's proven

2    himself to the Court and to the United States that he's going

3    to comply with any conditions that the Court would put on him

4    to guarantee his appearance at a future court date, to

5    guarantee the safety of the community in general during this

6    period.  So I would request the Court continue his current

7    status until the sentencing.

8            THE COURT:  Does Probation have any recommendation

9    or opinion?

10           PROBATION OFFICER:  Your Honor, I believe that the

11   United States would speak to it, but I believe the statute

12   says he should be detained unless he presents ample evidence

13   to the Court that he is not a flight risk or danger to the

14   community.  We would note that he to this point to our

15   knowledge has not had any bond violations, however.

16           THE COURT:  Has he been compliant in every respect?

17           PROBATION OFFICER:  Yes.  Over the last -- up until

18   the last three weeks, he was supervised by our district, and

19   since the end of February he's been reporting to the district

20   in New York and has had no bond violations that we are aware

21   of.

22           THE COURT:  All right.

23           MR. GIFFORD:  Your Honor, we would still ask for

24   detention of Mr. Volungus.  We did not oppose detention

25   initially because he was under military supervision at the

1    time, and his military command kept him on 24-hour-a-day watch

2    within the confines of Fort Campbell, Kentucky.

3        Our concern is where he would be residing in New York,

4    that's close to the Canadian border.  He does speak another

5    language, German or Dutch, I believe.  He did spend time in

6    Germany.  He's familiar with traveling very easily.

7        We do have a concern with these Internet conversations

8    where he spoke of a past of molesting children.  With as many

9    pictures as he seems to have a fetish for, we would strongly

10   oppose him to be released today.  The use of the Internet is

11   accessible to anybody anywhere.  Just as counsel said, he can

12   walk into any public library and log on to the Internet.

13           MR. PERKINS:  Judge, if I may, every one of those

14   factors has existed since Mr. Volungus was originally

15   indicted.  Mr. Volungus has not been under military

16   supervision for the past month, and the United States did not

17   seek detention then.  I would submit that is not a good reason

18   to seek detention, the fact that he's no longer in the

19   military.  They didn't oppose his continuing on an unsecured

20   bond for the last 30 days when he went home to live with his

21   parents.

22       He's had every opportunity to flee, Judge.  If he was

23   going to run -- he's known the evidence against him.  He's

24   known where this process was leading.  He's been speaking with

25   counsel throughout.  He's been dealing with his parents.  If

1  he was going to run, if there was any evidence that he was

2  going to run whatsoever, he would have been long gone by now.

3      He is living under the supervision of his parents.  He's

4  complying with conditions of bond.  As I said, I would submit

5  he has proven amply, which is required by the statute, that

6  he's not going to run because he hasn't.  He's had months and

7  months.  This has been going on now for seven months.

8          THE COURT:  Mr. and Mrs. Volungus, is he going to be

9  living with you?

10          MR. VOLUNGUS:  Yes.

11          MRS. VOLUNGUS:  Yes.

12          THE COURT:  You'll take responsibility for him?

13          MRS. VOLUNGUS:  Certainly would.

14          THE COURT:  You feel comfortable in doing that?

15          MRS. VOLUNGUS:  Yes, I do.

16          MR. VOLUNGUS:  Yes.

17          THE COURT:  I don't think the United States has

18  shown that he's a likelihood of a flight risk or a danger to

19  other people at this time.  I'll deny the motion to be taken

20  into custody.

21      Are there any conditions of his release you would

22  propose?

23          MR. GIFFORD:  One moment, Your Honor.  Yes, Your

24  Honor.  One of the very first conditions is that he be

25  released into the custody of his parents and that his parents

1  sign the bond owning up to the liability if he does not

2  return.  Another condition is we would still ask that he have

3  no contact with any computer whatsoever, not to log on to the

4  Internet, not to touch a computer.  If he does have one, that

5  it be taken out of his house.  Also, that he remain within the

6  district of -- I'm not sure which district in New York he's

7  going to be residing in, but that he remain within that

8  district.  And we would also ask that he surrender his

9  passport.

10          THE COURT:  I think in general all those things are

11  satisfactory.

12          MR. PERKINS:  Yes, Your Honor.  Mr. Volungus doesn't

13  have a passport to my knowledge, I don't believe.

14          THE COURT:  Yes, sir.

15          MR. VOLUNGUS:  Just one comment, if I may.  John's

16  grandmother lives in the Boston area, which I believe is a

17  different district, and since she is 80 years old, I'm sure he

18  would like to visit with her, and it would be a supervised

19  visit with either my wife or myself going with him.

20          THE COURT:  He'll be supervised by Probation in New

21  York?

22          PROBATION OFFICER:  That's correct, Your Honor.

23          THE COURT:  As long as they approve it, I'll give

24  him permission to visit his grandmother in Boston.  Any other

25  trips outside the district would have to be -- in fact, any

1    trip even to visit his grandmother would have to be approved

2    by the probation officers who are supervising him.

3              PROBATION OFFICER:  Should that be -- are you saying

4    any travel to Boston to visit his grandmother should be

5    accompanied by his family?

6              THE COURT:  Yes.  I would assume that any other trip

7    which for any reason might be approved would also be

8    accompanied by somebody.  The other conditions that you

9    mentioned ought to be made a part of the conditions of

10   release.  What would the bond be?

11             MR. GIFFORD:  I believe maybe $25,000, so he would

12   just remain on the same bond, I believe.  I believe it was

13   $25,000, Your Honor.

14             PROBATION OFFICER:  It is, Your Honor.

15             MR. PERKINS:  That's correct.

16             THE COURT:  Anything else?

17             MR. GIFFORD:  Nothing further, Your Honor.

18             THE COURT:  Okay.  Thank you.

19        (Proceedings concluded at 9:45 a.m.)

20

21                  C E R T I F I C A T E

22        I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM

23   THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

24    _s/ Alan W. Wernecke_                 February 18, 2010
     Alan W. Wernecke, RMR, CRR
25   Official Court Reporter